497 F.2d 1007
 Jerry Mack DORROUGH, Petitioner-Appellant,
v.
W. J. ESTELLE, Director, TDC, Respondent-Appellee.
 No. 73-1881.
 United States Court of Appeals, Fifth Circuit.
 July 29, 1974.
 
 David M. Ellis, Dallas, Tex. (Court-appointed), for petitioner-appellant.
 Gilbert J. Pena, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.
 Before RIVES, WISDOM and MORGAN, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 In this appeal from the district court's denial of his petition for a writ of habeas corpus, Jerry Mack Dorrough attacks the constitutionality of article 44.09, Vernon's Tex.Code Crim.Proc.Ann. Dorrough argues that he was denied equal protection of the laws when his direct appeal from a state felony conviction was dismissed upon his escape from confinement, and was not reinstated upon his subsequent recapture. Article 44.09 strips the Court of Criminal Appeals of jurisdiction in pending appeals by convicted felons who escape from custody, but provides for reinstatement under specified conditions, not met by Dorrough. We hold that the Texas statute violates the equal protection clause of the fourteenth amendment.
 
 
 2
 Dorrough was convicted in a Texas court of bank robbery and sentenced to twenty-five years confinement. He appealed. while his direct appeal was pending, on May 27, 1963, he and his cellmate escaped from prison, commandeering a United States mail truck to make their getaway. Dorrough was recaptured two days later. He is now serving a twenty-five year sentence in a federal penitentiary for the theft of the mail truck. See 18 U.S.C. 2114.[1] The State of Texas has filed a detainer warrant against Dorrough for the unserved portion of his state sentence. In this action he seeks to void the detainer.[2]
 
 
 3
 After Dorrough was recaptured, on motion by the State the Court of Criminal Appeals dismissed his direct appeal in accordance with article 44.09, Tex.Code Crim.Proc.Ann., which provides:
 
 
 4
 If the defendant, pending an appeal in the felony case, makes his escape from custody, the jurisdiction of the Court of Criminal Appeals shall no longer attach in the case. Upon the fact of such escape being made to appear, the court shall, on motion of the State's attorney, dismiss the appeal; but the order dismissing the appeal shall be set aside if it is made to appear that the defendant has voluntarily returned within ten days to the custody of the officer from whom he escaped; and in cases where the punishment inflicted by the jury is death or confinement in an institution operated by the Department of Corrections for life, the court may in its discretion reinstate the appeal if the defendant is recaptured or voluntarily surrenders within thirty days after such escape.
 
 
 5
 Arguing that the statute violates the equal protection clause of the fourteenth amendment, Dorrough filed an action in the district court against the State of Texas seeking damages and injunctive relief under the Civil Rights Act, 42 U.S.C. 1983. The case was referred to a United States magistrate, who held that the suit could not be pursued under the Civil Rights Act, but could be maintained as a claim for habeas corpus relief.[3] The magistrate substituted the present respondent-appellee for the State of Texas and found that Dorrough was in custody under Braden v. 30th Judicial Circuit Court of Kentucky, 1973, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443, and that state remedies had been exhausted. On the merits, the magistrate found no violation of equal protection and recommended denial of all relief. The district court adopted the magistrate's findings and conclusions and issued an order denying relief.[4] We reverse.
 
 
 6
 Equal protection analysis is 'two-tiered': under the standard most often employed, a state classification will be upheld if rationally related to a ligitimate state purpose; but classifications that are 'suspect' or that touch on a 'fundamental interest' will be subjected to 'strict scrutiny' and struck down unless justified by a compelling state interest. See Shapiro v. Thompson, 394 U.S. 618, 655, 89 S.Ct. 1322, 22 L.Ed.2d 600 (Harlan, J. concurring); Developments in the Law-- Equal Protection, 82 Harv.L.Rev. 1065 (1969). The first fork in the well-traveled road of equal protection analysis, therefore, poses the question of the proper standard of review.
 
 
 7
 Dorrough urges that a strict standard be employed here. Equal access to criminal appeals, he contends, is a fundamental right and as such may be denied only to serve a compelling state interest. In support of this position, Dorrough relies on Griffin v. Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Douglas v. 814, 9 L.Ed.2d 811, and numerous related cases.[5] The thrust of this line of decisions is that a state may not discriminate against defendants on account of their poverty in parceling out rights of the accused. Plainly, the cases demonstrate that 'once established . . . avenues (of appellate review) must be kept free of unreasoned distinctions that can only impede open and equal access to the courts', Rinaldi v. Yeager, 1966, 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577. The cases do not, however, accord equal access to appellate review the status of a fundamental interest capable of triggering strict scrutiny.[6]
 
 
 8
 The Supreme Court has recently declared that the determination of what interests are to be considered 'fundamental' for purposes of choosing the proper standard or review under the equal protection clause should begin with an examination of substantive constitutional safeguards. Writing for the Court in San Antonio Independent School District v. Rodriguez, 1973, 411 U.S. 1, 33-34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16, Justice Powell described the inquiry as whether the interest involved is 'explicitly or implicitly guaranteed by the Constitution'. Appeals from state criminal convictions are not so favored. It had long been established that the federal Constitution does not require states to provide appellate review: 'An appeal from a judgment of conviction is not a matter of absolute right, independently of constitutional or statutory provisions allowing such appeal . . .. It is wholly within the discretion of the state to allow or not to allow such a review'. McKane v. Durston, 1894, 153 U.S. 684, 687, 14 S.Ct. 913, 915, 38 L.Ed. 867; Griffin v. Illinois, supra, 351 U.S. at 18, 76 S.Ct. 585. Of course, the Constitution requires that when provided appeals must comport with principles of due process and equal protection. Pate v. Holman, 5 Cir. 1965, 341 F.2d 764, 773 n. 10, modified on other grounds, 343 F.2d 546. But the fourteenth amendment protections may not be used to bootstrap the stricter standard of review for equal protection analysis. There are present here none of the substantive constitutional rights found at the heart of those 'fundamental interests' that trigger strict scrutiny.[7]
 
 
 9
 Although in dismissing Dorrough's direct appeal Texas has employed a harsh sanction, the severity of the detriment caused by the classification provides no key to whether the interest infringed is 'fundamental'. See San Antonio Independent School District v. Rodriguez, supra, 411 U.S. at 33, 93 S.Ct. 1278. Recognizing the importance of the interests concerned, the Supreme Court has nevertheless refused to accord welfare benefits,[8] housing,[9] education,[10] and discharge in bankruptcy[11] preferred status under the equal protection clause.[12] Faced with a paucity of logical limitations once an interest is declared 'fundamental' and the compelling state interest test is brought to bear, the Court has balked.[13] See Note, New Tenets in Old Houses: Changing Concepts of Equal Protection in Lindsey v. Normet, 58 Va.L.Rev. 930, 941 (1972). Instead of broadening the reach and number of fundamental interests, the Court has found flexibility in the other prong of equal protection analysis, the rational relationship test.
 
 
 10
 Under 'traditional' equal protection analysis, legislative classifications are permitted if they are rationally related to a legitimate state interest. See United States Department of Agriculture v. Moreno, 1973,413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782. Commentators have often noted that, at least at one time, this test seemed heavily weighted in favor of upholding the classification.[14] It was a test of 'minimal scrutiny'. Today, however, whatever it may have been in the past, the rational relationship standard is relatively strict. Recent Supreme Court cases teach that the test calls for a serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals.[15]
 
 
 11
 Under the Texas statute Dorrough is a member of narrow and special class of criminal defendants-- those defendants convicted and sentenced to terms of years in felony cases who escape and do not return voluntarily within 10 days. Tex.Code Crim.Proc.Ann. art. 44.09. The statute does not affect the right of appeal of those who escape before trial or sentencing. McGee v. State, Tex.Cr.App.1969, 445 S.W.2d 187, 190. It does not affect escaping nonfelons. And, although it provides for dismissal of appeals of escaping defendants sentenced to death or life terms, it provides more liberally for reinstatement of these appeals.
 
 
 12
 The appellee argues that the statute treats equally all those within the subject class; that is, all convicted defendants who, like Dorrough, escape from confinement after being sentenced to a term of years and do not voluntarily return within 10 days are treated alike in being deprived of any pending direct appeal. That fact is uncontested. But as the Supreme Court noted in McLaughlin v. Florida, 1964, 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L.Ed.2d 222, our inquiry must go further. 'Judicial inquiry under the Equal Protection Clause . . . does not end with a showing of equal application among the members of the class defined by the legislation. The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose'. See Rinaldi v. Yeager, supra, 384 U.S. at 309, 86 S.Ct. at 1499. The classification must include 'all persons who are similarly situated with respect to the purpose of the law.' Tussman & tenBroek, The Equal Protection of the Laws, 37 Calif.L.Rev. 341, 346 (1949); see F.S. Royster Guano Co. v. Virginia, 1920, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989.
 
 
 13
 We conclude that the classification drawn by article 44.09 is irrational in view of its obvious purpose-- to discourage convicts from escaping from confinement and to promote the prompt and voluntary return of those who do escape.
 
 
 14
 First, the statute is underinclusive. It does not apply to those who escape prior to sentencing. McGee v. State, supra, 445 S.W.2d at 190. In fact, it appears that only those who have appeals actually pending at the time of escape lose their right to appeal. A convicted felon who escapes and returns after being sentenced but before his record of appeal is filed with the Court of Criminal Appeals may still be able to prosecute an appeal.[16] Moreover, those convicted of misdemeanors do not lose their right to appeal if they escape while their appeals are pending. Although we recognize that the State's interest may be greater in reducing the number and duration of escapes of felons than of nonfelons, this does not itself excuse the underinclusiveness of the statute.
 
 
 15
 Second, the different treatment of the appeals of defendants who are sentenced to terms of years and defendants who are sentenced to life terms or death is without a rational basis. The statute provides, on the one hand, for setting aside the order dismissing the appeal of one sentenced to a term of years only upon 'voluntary' return within 10 days. Recapture does not qualify as 'voluntary' return. See, e.g., Holliday v. State, Tex.Cr.App.1972, 482 S.W.2d 215; Pendergrass v. State, Tex.Cr.App.1922, 92 Tex.Cr.R. 467, 244 S.W. 513. On the other hand, escapees under death or life sentences may have their appeals reinstated if they return within 30 days after their escape. And they need not return voluntarily; their appeals may be reinstated also if they are recaptured during the 30 day period.[17] Due to the irrevocability of death, capital convictions may be sui generis. Griffin v. Illinois, supra, 351 U.S. at 21, 76 S.Ct. 5850. (Frankfurter, J. concurring). We see no basis in logic, however, for treating those with life sentences differently from all those who are sentenced to terms of years. A defendant sentenced to a term of years may spend as long or longer behind bars than one sentenced to life. Indeed, Texas law treats equally for parole purposes those sentenced to life and those sentenced to terms of 60 or more years; all are eligible to be considered for parole after serving 20 years.[18] We cannot say that those sentenced to terms of years have a less significant interest in appeal than those sentenced to life imprisonment. Nor can we perceive any relationship between the type of sentence imposed and the potential merit of the appeal. Finally, the State's interest in protecting society from dangerous criminals cannot require that those sentenced to terms of years be treated more harshly for escaping than those sentenced to life. In short, article 44.09 invidiously discriminates against convicted felons sentenced to terms of years. The distinctions drawn by the statute are 'unreasoned distinctions' proscribed by the fourteenth amendment. Mayer v. Chicago, 1971, 404 U.S. 189, 196, 92 S.Ct. 410, 30 L.Ed.2d 372; Rinaldi v. Yeager, supra, 384 U.S. at 310, 86 S.Ct. 1497. The classification drawn by article 44.09 lacks more than 7mathematical nicety'. See Lindsley v. Natural Carbonic Gas Co., 1911, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369. It is 'wholly without any rational basis'. United States Department of Agriculture v. Moreno, supra, 413 U.S. at 538.
 
 
 16
 We emphasize that it is only the unreasonable classification, not the practice of dismissing or reinstating appeals of escapees, that is objectionable. We do not denigrate the historic reluctance of appellate courts to decide appeals of defendants who escape and refuse to submit to the control of the court below. See Molinaro v. New Jersey, 1970, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586; Bonahan v. Nebraska, 1887, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854; Smith v. United States, 1876, 94 U.S. (4 Otto) 97, 24 L.Ed. 32. Nor do we find fault with the Texas statute for providing for the immediate dismissal of appeals of escapees. Such a practice may be administratively prudent, and there is no constitutionally set rule for when dismissal should be made. In Smith the Court dismissed the case at the beginning of the following term. In Bonahan the Court struck the case from the docket at the end of the term in which it arose. In Molinaro the case was dismissed without awaiting 'the end of the Term or the expiration of a fixed period of time'. 396 U.S. at 366, 90 S.Ct. at 499. And in Van Blaricom v. Forscht, 5 Cir. 1974, 490 F.2d 461, 462 (en banc), this Court removed the appeal from the docket and ordered that if it was not made known to the Court within 30 days that the appellant was available and subject to judgment, his appeal would be dismissed. Accord, United States v. Dawson, 6 Cir. 1965, 350 F.2d 396; see also Eisler v. United States, 1949,338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (removed from docket), 338 U.S. 883, 70 S.Ct. 181, 94 L.Ed. 542 (cert. dismissed); United States v. Tremont, 1 Cir. 1971, 438 F.2d 1202. Finally, we do not criticize the reinstatement of an appeal upon the return of the appellant to custody. We have ourselves provided for it. See Brown v. United States, 5 Cir., nos. 26,249 & 30,405, May 26, 1971.[19]
 
 
 17
 Dismissal or reinstatement of appeals of escapees may be based on established and strictly followed policies, or may be left to the discretion of the appellate court. The point, though, is that dismissal or reinstatement may not be based on a policy that invidiously discriminates against certain classes of escapees. We express no opinion as to whether Texas may deny an appeal to all convicted individuals who escape, no matter how quickly they are recaptured or even if they return to custody voluntarily. That question is not before us.
 
 
 18
 When the Texas Court of Criminal Appeals dismissed Dorrough's appeal under Article 44.09 after his escape and recapture, it denied him equal protection of the laws. Dorrough must now be provided a direct appeal from his bank robbery conviction. Unless the State provides him an appeal-- or a new trial within a reasonable time, if an effective appeal is not possible-- the writ shall issue and the detainer warrant shall be voided.
 
 
 19
 Reversed and remanded.
 
 RIVES, Circuit Judge (specially concurring):
 
 20
 I concur in the result but not in everything said in the opinion. Insofar as the opinion demonstrates that the classification system established by Article 44.09 does not have a rational relation to a legitimate state purpose and therefore violates equal protection, I heartily agree.
 
 
 21
 Every statutory classification must meet the rational relationship test. Some classifications, those which are 'suspect' and those which deny a 'fundamental' right, can be justified only by showing a 'compelling' state interest. As to the statutory 'first appeal' provided to criminal defendants,[1] it seems to me that a classification which denies any appeal whatsoever to a prisoner who has been recaptured within two days after escaping can be justified only by showing a 'compelling' state interest.[2]
 
 
 22
 I therefore specially concur.
 
 
 
 [1]
 Dorrough pleaded guilty to the federal offense. He has challenged his guilty plea four times before this Court under 28 U.S.C. 2255, each time unsuccessfully. See Dorrough v. United States, 5 Cir. 1964, 327 F.2d 667; Dorrough v. United States, 5 Cir. 1965, 344 F.2d 125; Dorrough v. United States, 5 Cir. 1967, 385 F.2d 884, aff'd en banc, 1968, 397 F.2d 811, cert. denied, 394 U.S. 1019, 89 S.Ct. 1637, 23 L.Ed.2d 44; Dorrough v. United States, 5 Cir. 1971, 440 F.2d 1336, cert. denied, 404 U.S. 915, 92 S.Ct. 239, 30 L.Ed.2d 190
 
 
 [2]
 Dorrough has also previously sought to void the detainer, by arguing that the State lost jurisdiction over him by surrendering him to federal authorities. The district court held that Texas had not waived its right to have Dorrough returned for service of his state sentence. We affirmed. See Dorrough v. United States, 5 Cir. 1971, 440 F.2d 1063, cert. denied, 404 U.S. 840, 92 S.Ct 134, 30 L.Ed.2d 74
 
 
 [3]
 The magistrate stated:
 I believe it is clear, and I believe the court has already determined by entry of the order permitting the filing of this application, that it cannot be pursued as a civil rights action. I believe it is equally clear, and I believe the court so determined when it entered the order permitting filing of this application, that the relief sought by applicant is in the nature of habeas corpus and that applicant has present status to assert his claim. The State of Texas, who applicant sought to name as a defendant, is not a person amenable to suit under any of the civil rights statutes, including 42 U.S.C. 1983 . . ..
 The appellee here agrees that the magistrate and the district court were correct in treating Dorrough's complaint as an application for a writ of habeas corpus.
 This Court has held that a district court may determine the merits of a habeas claim without the necessity of impaneling a three-judge court. Scott v. District Attorney, E.D.La.1970, 309 F.Supp. 833, aff'd, 5 Cir. 437 F.2d 500. Other courts are in accord. The three-judge-court statute, 28 U.S.C. 2281, 'has no relation to Habeas Corpus proceedings'. United States ex rel. Murphy v. Warden of Clinton Prison, N.D.N.Y.1939, 29 F.Supp. 486, 489, aff'd, 2 Cir. 108 F.2d 861, cert. denied, 309 U.S. 661, 60 S.Ct. 583, 84 L.Ed. 1009. See also United States ex rel. Laino v. Warden of Wallkill Prison, S.D.N.Y.1965, 246 F.Supp. 72, 92 n. 16, aff'd, 2 Cir., 355 F.2d 208; United States ex rel. Robinson v. York, D.Conn.1968, 281 F.Supp. 8, 12; Tedder v. Cox, W.D.Va.1970, 317 F.Supp. 33, 35 n. 1.
 
 
 [4]
 Although the issue is not raised by the parties, we note a Wingo problem lurking here. See Wingo v. Wedding, 1974, U.S. , 94 S.Ct. 2842, 40 L.Ed.2d (1974). In Wingo the Supreme Court held that under the Magistrates Act of 1968, 28 U.S.C. 635(b), a magistrate has no authority to conduct an evidentiary hearing on a habeas corpus petition. Since we grant Dorrough relief on the grounds that the Texas statute is unconstitutional, we do not reach the Wingo issue
 
 
 [5]
 See, e.g., Mayer v. Chicago, 1971, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (denying free transcript to indigent appealing from nonfelony convictions violates equal protection); Tate v. Short, 1971, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (imprisonment of indigent as satisfaction of traffic fines violates equal protection); Williams v. Illinois, 1970, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (imprisonment of indigent beyond statutory maximum term for failure to pay fine and court costs violates equal protection); Williams v. Oklahoma City, 1969, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (denial of free transcript necessary for indigent to perfect appeal from drunken driving conviction violates equal protection); Rinaldi v. Yeager, 1966, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (withholding indigent inmate's pay to reimburse county for cost of transcript furnished for unsuccessful appeal violates equal protection); Smith v. Bennett, 1961, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (requiring indigents to pay filing fee before state habeas petition is considered violates equal protection)
 
 
 [6]
 The Court has, it is true, used the word 'fundamental' loosely in the context of equal access to criminal appeals. In Rinaldi v. Yeager, for example, the Court said: 'It is now fundamental that once established, these avenues (of appellate review) must be kept free of unreasoned distinctions . . ..' 384 U.S. at 310, 86 S.Ct. at 1500. We believe, however, that this use of the word is not intended to invoke the strict standard of review. We note that Rinaldi v. Yeager was decided under the rational relationship test. See infra. See also Mayer v. Chicago, 1971, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372
 
 
 [7]
 Compare, e.g., Roe v. Wade, 1973, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (privacy); Dunn v. Blumstein, 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (voting); Police Department of City of Chicago v. Mosley, 1972, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (free expression); Shapiro v. Thompson, 1969, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (interstate travel); Sherbert v. Verner, 1963, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (free exercise of religion); Skinner v. Oklahoma, 1942, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (procreation)
 
 
 [8]
 Jefferson v. Hackney, 1972, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285; Dandridge v. Williams, 1970, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491. See also Richardson v. Belcher, 1971, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231
 
 
 [9]
 Lindsey v. Normet, 1972, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36
 
 
 [10]
 San Antonio Independent School Dist. v. Rodriguez, 1973, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16
 
 
 [11]
 United States v. Kras, 1973, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626
 
 
 [12]
 The Court has also been reluctant to increase the number of suspect classifications. See San Antonio Independent School Dist. v. Rodriguez, 1973, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (wealth); Kahn v. Shevin, U.S. , 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974) (gender); Weber v. Aetna Casualty & Surety Co., 1972, 406 U.S. 164, 92 S.Ct 1400, 31 L.Ed.2d 768 (illegitimacy)
 
 
 [13]
 One commentator has described the inherent difficulties in expanding the 'strict scrutiny' standard of review as follows:
 Every interest which triggered active review took on the authority of a formal catagorical imperative. Once established, it applied to any and all situations; there was no way to control it. Each new fundamental interest or suspect classification traveled with increasingly cumbersome precedential baggage as more competing rights were swept aside. It become apparent that like strategic nuclear weapons the active standard of review . . . could not be used without absolute commitment and wanton destruction.
 Note, The Decline and Fall of the New Equal Protection: A Polemical Approach, 58 Va.L.Rev. 1489, 1496 (1972).
 
 
 [14]
 See, e.g., Gunther, Forward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1, 18-19 (1972); Developments in the Law-- Equal Protection, 82 Harv.L.Rev. 1065, 1087 (1969); Note, New Tenets in Old Houses: Changing Concepts of Equal Protection in Lindsey v. Normet, 58 Va.L.Rev. 930, 937 (1972)
 
 
 [15]
 See, e.g., United States Department of Agriculture v. Moreno, 1973, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782; Weber v. Aetna Casualty & Surety Co., 1972, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768; Eisenstadt v. Baird, 1972, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349; Mayer v. Chicago, 1971, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372; Reed v. Reed, 1971, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225
 
 
 [16]
 An appeal is not perfected under Texas law until the record of appeal is filed with the Court of Criminal Appeals. McGee v. State, Tex.Cr.App., 445 S.W.2d 187, 190. In Webb v. State, Tex.Cr.App.1970, 460 S.W.2d 903, the defendant escaped on May 27, 1969, and was recaptured on October 13, 1969. Because his record of appeal was not filed until May 18, 1970, however, the State's motion to dismiss the appeal under article 44.09 was denied
 
 
 [17]
 Thus, had Dorrough been under a life sentence, after his recapture the Court of Criminal Appeals could have reinstated his appeal. See Foster v. State, Tex.Cr.App.1973, 497 S.W.2d 291; Steese v. State, Tex.Cr.App.1960, 170 Tex.Cr.R. 269, 340 S.W.2d 49. In Palmer v. State, Tex.Cr.App.1935, 128 Tex.Cr.R. 293, 81 S.W.2d 76, 77, the court stated that it was its 'duty' to decline to sustain the State's motion to dismiss the appeal of the appellant, who had been sentenced to death, had escaped, and had been recaptured 22 days later
 
 
 [18]
 Tex.Code Crim.Proc.Ann. art. 42.12 15:
 (a) The Board (of Pardons and Paroles) is hereby authorized to release on parole, with the approval of the Governor, any person confined in any penal or correctional institution of this State, except persons under sentence of death, who has served one-third of the maximum sentence imposed, provided that in any case he may be paroled after serving 20 calendar years. Time served on the sentence imposed shall be the total calendar time served and all credits allowed under the laws governing the operation of the Department of Corrections, and executive clemency. All paroles shall issue upon order of the Board, duly adopted and approved by the Governor.
 
 
 [19]
 In the Brown case we wrote:
 It is common knowledge that appellant, H. Rap Brown, has disappeared and his present whereabouts are unknown. If his disappearance was willful and he is yet alive he would necessarily be a fugitive from justice. Under these circumstances, the Court, sua sponte orders this appeal stricken from the docket of this Court, to be reinstated, on appropriate motion, if and when it should be known to the Court that Brown is available and subject to any judgment which might be entered in this case. See the order of this Court dated February 3, 1971, No. 29,419, Timothy Leary vs. United States of America.
 Brown later moved to reinstate his appeal, but this Court did not reach the question of reinstatement. We vacated the judgment and sentence below, because Brown had not been present at sentencing. The cause was remanded for resentencing. 'Upon imposition of sentence and entry of judgment, Brown will be under a judgment and sentence from which a timely appeal may be taken.' United States v. Brown, 5 Cir. 1972, 456 F.2d 1112, 1114.
 
 
 [1]
 Douglas v. California, 1963, 372 U.S. 353 at 356 and 357, 83 S.Ct. 814; cf. Ross v. Moffitt, 1974, U.S. , 94 S.Ct. 2437, 40 L.Ed.2d
 
 
 [2]
 See Mr. Justice Marshall's discussion in dissent in San Antonio School District v. Rodriguez, 1973, 411 U.S. 1, at 102 and n. 61, 93 S.Ct. 1278