## Moncus Twitty v. The State.

No. 13933.   Delivered January 14, 1931.
Reported in 34 S. W. (2d) 875.

The opinion states the case.

*Curtis Douglass* and *H. E. Florey,* both of Pampa, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is rape; the punishment, death.

Jessie Lee Davenport, the injured party, lived with her mother at a camp, which was near a tent occupied by appellant.   She and her little brother were each three years of age.   A carnival being in progress, the little girl's mother left her and her brother in charge of appellant, with the admonition to watch them while she attended the carnival.   Returning home after midnight, she found the children in bed.   The little girl told her that appellant had hurt her.   Upon examining the child, she discovered that her clothes were bloody and that her female organ had been bruised and badly torn.   Appellant stated to the mother that the little girl had fallen down and hurt herself.   He advised her that she did not need a doctor, and told her not to tell anybody about her condition.   Appellant had blood on the front of his shirt on the lower part.   The injured child was examined by a doctor.   He described her condition as follows: "She had a general tear embracing not only the vagina but also the muscles on the outside of the birth canal; something had torn her open; there was two openings; the one on the right hand side, you could lay your thumb in it where the muscles had been torn loose from the rectal gut.   The laceration on the left hand side was sufficient in size to put your thumb in about the length of the thumb.   That laceration was sufficiently large to have permitted the penetration of the male organ; not all of it of course because there wasn't room for it but the size was

there in circumference but not in length." The doctor expressed the opinion the wound had been made by pulling the tissues apart with the thumbs. He stated that the hymen was torn and that the injured female organ was sufficiently large after being torn to have enabled appellant to penetrate it with his male organ. One of the doctors testified that he found evidence of a discharge in the wound, but stated that he would be unable to determine whether it was semen unless he placed it under the microscope. In his confession appellant said:

"I now remember being on the bed with this little girl and putting my left hand between her legs. I remember that this little girl cried and begged me to quit. At the time she commenced crying and begging me to quit I had my finger in her private parts trying to open it. If I did put my male organ in this child's female organ I have no recollection of it. I might have done it but I do not remember if I did."

He further stated in his confession that he told the arresting officer that he wanted him to shoot him "right between the eyes." In this connection he said: "I knew at that time I had raped this little girl and didn't much care if he did shoot me because I was about half crazy on account of my wife having left me." There was testimony that appellant was drunk when he was left with the little girl. Several witnesses testified that they entertained the opinion that appellant was insane. Other witnesses on the part of the state expressed a contrary opinion.

We find in the record no exceptions to the court's charge. No bills of exception are brought forward. It appears that an issue was raised as to the voluntary character of the confession. Such issue was properly submitted to the jury in the charge of the court. It further appears that the issue of insanity was submitted in the charge. Prior to the trial, an affidavit was made that appellant was of unsound mind and not of sufficient mental capacity to prepare a rational defense. The issue as to whether appellant was then sane was submitted to a jury in accordance with the statutory requirements. The jury having answered the question against appellant's contention, he was thereafter brought before another jury on the question of his guilt or innocence. In the state of the record, no question except the sufficiency of the evidence is presented for review. The fact that the jury assessed the extreme penalty has led us to make a most painstaking examination of the evidence.

The opinion is expressed that the evidence is sufficient to support the conviction.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.