## JOE PALMER v. THE STATE.

No. 17260.  Delivered October 10, 1934.
On the Merits March 6, 1935.
Rehearing Denied April 3, 1935.

The opinion states the case.

*H. L. Lewis,* of Navasota, and *Robt. B. Smither,* of Huntsville, for appellant.

*M. E. Gates,* Special Prosecutor, and *Max M. Rogers,* District Attorney, both of Huntsville, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The appellant was tried in the District Court of Grimes County for the offense of murder, and upon the verdict of the jury he was convicted and his penalty assessed at death.

The judgment was entered on the 27th of June, 1934. The

case was brought to this court on appeal on September 28, 1934. The appeal has not been reached for consideration by this court, but there are before us affidavits filed October 1, 1934, stating that Joe Palmer escaped from custody on the 22nd day of July, 1934, and that he was recaptured in the State of Kentucky on the 12th day of August, 1934, which was twenty-two days after the date of the escape. The affidavits filed invoke the decision of this court as to whether the appeal shall be dismissed or considered.

The statute upon the subject is Chapter 34, Acts of 43rd Legislature, Regular Session, page 64, amending article 824, C. C. P. The language of the statute is as follows: "If the defendant, pending an appeal in a felony case, makes his escape from custody, the jurisdiction of the Court of Criminal Appeals shall no longer attach in the case. Upon the fact of such escape being made to appear, the court shall, on motion of the State's attorney, dismiss the appeal; but the order dismissing the appeal shall be set aside if it is made to appear that the defendant has voluntarily returned within ten days to the custody of the officer from whom he escaped; *and in cases where the punishment inflicted by the jury is death or confinement in the penitentiary for life, the court may in its discretion reinstate the appeal if the defendant is recaptured or voluntarily surrenders within thirty days after such escape.*"

It appearing that the appellant's recapture was effected more than ten and less than thirty days after his escape, it is the duty of this court to decline to sustain the motion to dismiss the appeal. It is so ordered.

*Affirmed.*

### ON THE MERITS.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

The trial was had in Grimes County on a change of venue from Walker County.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Major Crowson by shooting him with a pistol.

The uncontroverted testimony of witnesses for the State was, in substance, as follows: James Mullins, Raymond Hamilton and appellant, all of whom were convicts, had been sent to Eastham State farm. Mullins was discharged on the 10th of January, 1934, but prior thereto had agreed to aid Hamilton and others in an effort to escape. Upon being discharged, Mul-

lins went to Dallas, where he procured several automatic pistols, some shotguns and Browning high-powered rifles, which he, Clyde Barrow, Bonnie Parker and Floyd Hamilton, brother of Raymond, carried to Eastham farm in Barrow's V-8 Ford coupe. After Mullins had hidden two .45 automatic pistols at a point where they would be available to Raymond Hamilton and appellant, he and his companions drove to Corsicana, where Floyd Hamilton left them. They then returned to Eastham farm and remained in its vicinity until the date of the homicide. In the meantime Floyd Hamilton visited his brother Raymond and told him where the pistols had been hidden. About 7 a. m., January 16, 1934, Mullins, Clyde Barrow and Bonnie Parker parked their V-8 Ford coupe at the edge of the woods near Eastham farm and waited for appellant and Raymond Hamilton to come to work. On the date last mentioned Hamilton, who belonged to squad No. 2, came to work with squad No. 1, to which appellant belonged. Upon observing that Hamilton was out of his place, Olin Bozeman, the guard of squad No. 1, asked deceased to report the matter to the captain in order that Hamilton might be returned to his proper squad. At this juncture, without provocation, appellant mortally wounded deceased by shooting him in the abdomen with a .45 automatic pistol. Bozeman was also wounded, but survived. After the shooting, and while covered by an automatic rifle barrage fired by Mullins and Clyde Barrow, appellant, Raymond Hamilton and two other convicts ran to Barrow's car and entered it. Driving at a rapid rate of speed, they left the scene of the homicide.

Deceased was carried to a hospital in Huntsville where he died January 27, 1934. We quote his dying declaration as follows:

"My name is Major J. Crowson. I am called at the Eastham State Prison Farm 'Long Arm Man' or 'Backfield Man,' and on the morning of January 16, 1934, Olin Bozeman was carrying No. 1 squad. I was riding a horse and I was in front of Bozeman's squad. It was about 7:15 a. m. when Bozeman called me and said 'Raymond Hamilton has jumped in my squad,' and I said 'Boy that is for something,' and Bozeman said 'Yes it is.' Joe Palmer (appellant) was in Boss Bozeman's squad and he pulled an automatic pistol. It was a .44 or .45, and Joe Palmer shot me in the stomach. After Joe Palmer shot me in the stomach he shot at me once while I was riding away. When Joe Palmer pulled his gun on me Joe Palmer said 'Don't you boys try to do anything.' I never did get my hand on my

gun, and I never did shoot at Joe Palmer or any other convicts that was in the squad. After I was shot I rode to the camp and told Captain Mozingo that I was shot and shot bad. I am positive that it was Joe Palmer who shot me."

Appellant did not testify in his own behalf, and, as already stated, no witness gave testimony controverting the fact that appellant, without provocation, fired the shot that killed deceased.

In addition to charging appellant with the offense of murder, the indictment embraced averments as follows: "And the grand jurors aforesaid, do further present that prior to the commission of the aforesaid offense by the said Joe Palmer, to-wit, on the 20th day of May, A. D., 1929, in the district court of Limestone County Texas, the said Joe Palmer was duly and legally convicted in said last named court of an offense to which the penalty of death was and is affixed as an alternate punishment, to-wit, the offense of robbery, upon an indictment then legally pending in said last named court and of which the said court had jurisdiction and said conviction was a final conviction."

Article 64, P. C., reads as follows: "A person convicted a second time of any offense to which the penalty of death is affixed as an alternate punishment shall not receive on such second conviction a less punishment than imprisonment for life in the penitentiary."

Appellant made a motion to quash that part of the indictment charging a prior conviction on the ground that it was not averred that said offense was perpetrated by either the use of firearms or a deadly weapon. Article 1408, P. C., defines robbery as follows: "If any person by assault, or violence, or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary for life, or for a term of not less than five years; and when a firearm or other deadly weapon is used or exhibited in the commission of the offense, the punishment shall be death or by confinement in the penitentiary for any term not less than five years."

It is observed that robbery may be committed (1) by assault, (2) by violence, and (3) by putting in fear of life or bodily injury. Branch's Annotated Penal Code, sec. 2398; Pendy v. State, 31 S. W., 647; Robinson v. State, 149 S. W., 186. When a firearm or other deadly weapon is used the punishment provided is death or confinement in the penitentiary for any term

of years not less than five, and when such fact is alleged and proven the crime of robbery becomes capital. Otherwise, it is not a capital felony. Gonzales v. State, 226 S. W., 405. The allegation in the present indictment that the prior conviction was for robbery, an offense to which the alternate penalty of death is affixed, in our opinion is equivalent to an allegation that the robbery was perpetrated by the use of firearms or other deadly weapons. We say this in view of the fact that the alternate punishment of death is only provided 'in case of the use of the firearms or other deadly weapons.

In Meredith v. State, 184 S. W., 204, it is shown that Meredith was charged with embezzling funds of the Aetna Life Insurance Company of Hartford, Connecticut. There was no averment that said company was a corporation. The indictment charged that Meredith "was an insurance agent and solicitor, to-wit, an agent and solicitor for the Aetna Life Insurance Company of Hartford, Connecticut, which was then and there a life insurance company lawfully doing business in the State of Texas, and of which J. N. Houston was the manager for the State of Texas." In reaching the conclusion that the failure to allege that the company was a corporation did not vitiate the indictment, this court used language as follows:

"Under all the decisions of this court, it seems to be the settled rule that it was necessary to allege that the Aetna Life Insurance Company, as it was the company alleged to be defrauded, was a corporation, unless the statutes of this State give us judicial knowledge that it was an incorporated company. The insistence of the State is that the general statutes of this State do give this and all other courts judicial knowledge that only an incorporated company can legally do a life insurance business in this State, and when the indictment alleged that appellant was 'an agent for the Aetna Life Insurance Company, which was then and there a life insurance company lawfully doing business in the State of Texas,' it was equivalent to an allegation that it was an incorporated company, for no company other than an incorporated company could lawfully do a life insurance business in this State; and chapter 108 of the Acts of the Thirty-First Legislature (Sess. Acts, p. 192) seems to support such contention. We are therefore of the opinion the court did not err in refusing to quash the indictment, nor in refusing to sustain the motion in arrest of judgment. The act in question is a general law, and this court and all courts must take judicial cognizance of its provisions. Article 463 (now article 411) of the Code of Criminal Procedure (1895), provides

that 'matters of which judicial notice is taken need not be stated in an indictment.' For a citation of authorities, see section 373, White's Ann. Code of Criminal Procedure."

It is not necessary to allege the prior conviction with the same particularity as if the party was charged originally with the commission of such an offense. 31 Corpus Juris, 735; 12 Tex. Jur., 796; Neece v. State, 137 S. W., 919. We quote from 12 Tex. Jur., page 795, as follows: "This averment is necessary in order to give the accused notice that a greater penalty is to be sought than for a first offense, and to enable him to take issue thereon, and if possible show there is a mistake in identity, or that there was no final former conviction, or the like."

In support of the text, Neece v. State, supra, and Williams v. State, 5 S. W. (2d) 514, are cited. In short, the rule is that, in alleging the former conviction, the court in which the conviction was obtained, the time of the conviction and the nature of the offense should be set forth. Morman v. State, 75 S. W. (2d) 886. Manifestly a presumptively innocent man could not fail to understand from the indictment in the present case that he was charged with having been convicted of the offense of robbery by firearms or other deadly weapons at a stated time in the district court of Limestone County. He would not be left in doubt as to where to find the record in order to make preparation for trial. Appellant was identified as the person who was convicted in Limestone County on the date alleged in the indictment of the offense of robbery by firearms, and the record showing such conviction was introduced in evidence.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Appellant, through his counsel, reiterates his contention that the indictment is insufficient. It is difficult to make a more comprehensive statement of the conclusion of the court than that which is contained in the opinion affirming the case.

The averment in the indictment against the appellant follows the statute. Omitting the formal parts, the indictment reads as follows:

"THE GRAND JURORS, for the county of Walker, State afore-

said, duly organized as such at the May Term, A. D., 1934, of the District Court for said County, upon their oaths in said Court present that Joe Palmer on or about the 16th day of January, A. D., one thousand nine hundred and thirty-four and anterior to the presentment of this Indictment, in the County of Walker and State of Texas, did then and there unlawfully and voluntarily, and with malice aforethought, kill Major Crowson by shooting him with a pistol.

"And the grand jurors aforesaid, do further present that prior to the commission of the aforesaid offense by the said Joe Palmer, to-wit, on the 20th day of May, A. D., 1929, in the district court of Limestone County, Texas, the said Joe Palmer was duly and legally convicted in said last named court of an offense of which the penalty of death was and is affixed as an alternate punishment, to-wit, the offense of Robbery, upon an indictment then legally pending in said last named court and of which the said court had jurisdiction, and said conviction was a final conviction, against the peace and dignity of the State."

Appellant contends that the failure to embrace in the indictment above copied an averment stating that appellant was convicted of the offense of "robbery with firearms" characterizes the indictment as fatally defective.

The statute denouncing robbery is article 1408, P. C., 1925, which reads as follows: "If any person by assault, or violence, or by putting in fear of life or bodily injury, shall fraudulently take from the person or possession of another any property with intent to appropriate the same to his own use, he shall be punishment by confinement in the penitentiary for life, or for a term of not less than five years; *and when a firearm or other deadly weapon* is used or exhibited in the commission of the offense, the punishment shall be *death* or by confinement in the penitentiary for any term not less than five years."

The sentence in the District Court of Limestone County reads as follows: "IT IS THE ORDER OF THE COURT that the defendant, Joseph Palmer, who has been adjudged to be guilty of Robbery with Firearms, and whose punishment has been prescribed at confinement in the penitentiary for a term of not less than five nor more than 25 years, be delivered by the Sheriff of Limestone County, Texas, immediately, to the Superintendent of Penitentiaries of the State of Texas, or other person legally authorized to receive such convicts, and the said Joseph Palmer shall be confined in said penitentiaries for a term of not less than 5 nor more than 25 years, in accordance with the provisions of the law governing the penitentiaries of said State, and

the said Joseph Palmer is remanded to jail until said Sheriff can obey the directions of this sentence."

The syllabus in the case of Robinson v. State, 149 S. W., 186, contains the follows: "In an indictment for a statutory offense, the identical language of the statute need not be used, but the indictment will be good if the offense be set forth in plain and intelligible words which are of equivalent or more extensive meaning than those used in the statute."

Such is the conclusion of this court as stated in many cases.

In the case of Thompson v. State, 16 Texas Appeals, 75, this court, speaking through Judge Willson, said: "While it is the safer practice to use the precise words of a statute in charging the offense, it is not always essential to do so. If the indictment follows the statute in substance, it will suffice. If the offense be set forth in plain and intelligible words, which are of equivalent or more extensive meaning than those used in the statute in defining the offense, the indictment will be good."

The same conclusion comes from the opinion of Judge Davidson in the case of Runnells v. State, 34 Texas Crim. Rep., 432. See also Willson's C. C. P., art. 428a, and authorities cited in the case of Robinson v. State, 149 S. W., 186, (especially page 187).

Robbery being an offense authorizing the jury to assess the death penalty only on condition that the offense is committed by the use of firearms or other deadly weapon, it seems clear that the statement in the indictment that the appellant had been legally convicted of an offense for which the alternate penalty of death is authorized, is not subject to the criticism advanced by the appellant. If that part of the indictment against appellant which deals with the previous offense of which he was convicted rendered the indictment defective, it would be the duty of this court to reverse the judgment notwithstanding the evidence portraying the incidents of the tragedy which resulted in the death of Major Crowson. As set out in the record on this appeal, the evidence was doubtless such as to impress the jury with the conviction that the appellant was guilty of the murder of Major Crowson under conditions which presented no extenuating circumstances. It seems more than probable that the evidence of that tragedy accounted for the verdict assessing upon appellant the extreme penalty other than the previous conviction of the appellant. The evidence disclosing the circumstances of the assault and mortal injury of Major Crowson are set forth in substance in the original opinion delivered in this appeal.

The dying declaration of Major Crowson, is quoted in substance in the original opinion, against which there is directed no criticism and which so far as we are able to discern is subject to none. The accuracy of the dying declaration and the propriety of receiving it is challenged by no bill of exception; nor is the remark attributed to Major Crowson, as disclosed by the testimony of Gordon Burns (which is not in the dying declaration) made the subject of exception. The statement of Burns setting forth the dying declaration of Major Crowson is criticised as being prejudicial but it is not controverted; nor, as stated above, is there any exception to its introduction in evidence. The only place in the record in which we have perceived any complaint of the reception of evidence is in the motion for new trial. To require or authorize consideration on appeal, the evidence set forth in the motion for new trial should have been made the subject of objection at the time it was offered and a bill of exception reserved if any unfavorable ruling was made.

Article 667, C. C. P., and its interpretations in the decisions of this court make clear that except in rare instances the complaints of the ruling of the court upon the reception or rejection of evidence cannot be reviewed or revised unless it appear from the bill of exception that the objection to the ruling of the court was made during the trial and that his action thereon was certified in the bill of exception, approved and signed by the trial judge. Additional precedents will be found in the 1934 Supplement to Vernon's Ann. Tex. C. C. P., vol. 2, p. 47. The same principle and practice applies with reference to the objections to the charge of the court. See Twitty v. State, 116 Texas Crim. Rep., 548; Sheffield v. State, 118 Texas Crim. Rep., 329. The statute and the procedure are based upon the principle that the supposed or alleged error of the trial judge in ruling upon the reception of evidence should at the time be called to his attention in an exception to the end that he might revise or correct the ruling, if necessary, and his refusal to do so cannot be reviewed on appeal in the absence of a statement in the way of a bill of exception signed by the judge showing that appropriate and timely objection was made and that the court declined to change his ruling. See articles 657 to 666, inclusive, Vernon's Ann. Tex. C. C. P., 1925, vol. 2, pp. 138-342.

Notwithstanding the absence of certified bills of exception, we have examined the various matters presented for review. The principal one is the contention that the indictment was imperfect and that the charge on the enhanced penalty was not

justified under the circumstances. Our expressions upon the subject are embraced in the foregoing remarks.

The evidence that appellant and others acted in the commission of the offense justifies an instruction upon the law of principals. There was fairly presented in the charge the question as to whether or not appellant acted upon malice. The jury was instructed in a manner to exculpate the appellant if Raymond Hamilton was the offender and appellant was not a principal.

Our examination of the charge, which is voluminous and carefully prepared, leaves us of the opinion that it revealed no error which would justify this court in reversing the judgment, even if there had been exception to the charge made and reserved before it was read to the jury.

We are constrained to overrule the motion for rehearing, and it is so ordered.

*Overruled*