COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

FRANCISCO VILLESCAS,                                )

                                                                              )              
No.  08-03-00131-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
346th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )               
(TC# 20020D06144)

                                                                              )

 

 

O
P I N I O N

 








Appellant
Francisco Villescas appeals his conviction for attempted sexual assault.  A jury found Appellant guilty of the offense
and the trial court assessed an enhanced sentence of 18 years= imprisonment in the Institutional
Division of the Texas Department of Criminal Justice.  Appellant filed a Motion for New Trial, which
the trial court denied after a hearing on the motion.  Appellant timely filed his notice of
appeal.  Appellant raises two issues on
appeal:  (1) whether the trial court
erred in allowing an enhanced punishment because the State failed to provide
timely notice that it would seek to enhance punishment; and (2) whether the
trial court erred in denying his motion for new trial based upon newly discovered
evidence.  We reverse and remand the
cause to the trial court for a new punishment phase of trial only and in all
other respects, affirm the trial court=s
judgment.

On November 11,
2002, Isabel Terrazas, the complainant, visited her sister=s house and later walked to the home of
Corina Villescas, Appellant=s
sister.  This was her first visit to
Corina=s home.  Corina was an acquaintance of Ms. Terrazas=s. 
Ms. Terrazas knew Appellant as a friend of her father=s. 
When Ms. Terrazas arrived, only Corina, Corina=s
husband, and their child were present.  A
few minutes later, Appellant arrived and around 10:30 p.m. the adults began
drinking beer.  








Later that
evening, Ms. Terrazas and Appellant walked to a nearby convenience store to buy
more beer.  While at the store, Ms.
Terrazas talked to some other men, which seemed to make Appellant jealous.  Appellant and Ms. Terrazas then returned to
Corina=s home
and continued the drinking and socializing. 
Before midnight, Appellant asked Ms. Terrazas to accompany him to his
aunt=s house
so he could get money to buy more beer. 
Appellant lead the way on a route through a desert area.  When they reached an arroyo, Ms. Terrazas
followed Appellant down a slope and slipped and fell.  Ms. Terrazas testified that as she got back
up on her feet, Appellant pushed her down, got on top of her, and told he was
going to rape her.  Ms. Terrazas
began screaming and tried to fight Appellant off by kicking, punching, and
scratching him.  Appellant pulled Ms.
Terrazas= pants
down, ripping the button and zipper portion of her pants.  Appellant also pulled Ms. Terrazas= shirt and ripped her bra.  Appellant took off his pants and tried to
insert his penis into her vagina.  Ms.
Terrazas pled with Appellant to stop the attack, and after several minutes, he
finally stopped.  As they were leaving
the arroyo, Appellant threatened her not to say anything.

Ms. Terrazas went
straight home and told her family what had happened.  Ms. Terrazas then called the police.  According to Ms. Terrazas= mother and the police who arrived at
her home, Ms. Terrazas was hysterical and crying.  Ms. Terrazas told the police what
happened.  The officers observed and
collected Ms. Terrazas=
torn clothing.  The police officers left
her home and later returned with Appellant. 
Ms. Terrazas identified Appellant as her attacker.

Notice
of Enhancement

In Issue One,
Appellant contends the trial court committed reversible error by allowing an
enhanced punishment without proper notice. 
Specifically, Appellant asserts that the State failed to provide
sufficient notice of its intent to seek an enhanced punishment.

The indictment
charging Appellant with attempted sexual assault was filed on December 4,
2002.  On February 18, 2003, the State
filed a ANotice of
Enhancement,@ by which
it sought an enhancement of the range of punishment for the charged offense
under Section 12.42(a)(3) of the Texas Penal Code due to an alleged prior
felony conviction for burglary of a building in October 1992.  See Tex.Pen.Code
Ann. '
12.42(a)(3)(Vernon Supp. 2004-05). 
Appellant=s trial
began on February 24, 2003.  Prior to
jury selection, Appellant objected to the State=s
enhancement notice on grounds that it was insufficient.  The trial court deferred argument on the
issue until, and if, the parties reached that point of the trial.  On February 26, 2003, the State rested its
case-in-chief in the guilt-innocence stage. 
Without presenting evidence, the defense rested.  The charge was submitted to the jury, who
found Appellant guilty.








The punishment
phase of trial began on February 27, 2003. 
At that time, Appellant objected to enhancement based on lack of timely
notice.  The trial court noted that the
enhancement notice was filed on February 18, but withheld ruling on the
objection at that time and entered a plea of not true to the enhancement
allegation on behalf of the Appellant. 
The State then called a fingerprint expert to take Appellant=s fingerprints in the courtroom for
comparison purposes.  Appellant expressed
confusion about the process of comparing his prints to prior judgments.  After a short recess, the trial court
recessed the case until the following week because Appellant was having
difficulty understanding the proceeding. 
The trial court resumed the punishment phase proceeding on March 6,
2003.  Defense counsel represented to the
court that the procedure on identification had been properly explained to
Appellant and that Appellant was now aware of the procedure.  Appellant maintained his plea of Anot true@
because of his objection to the enhancement notice, but stipulated to the prior
felony conviction that was alleged for enhancement purposes.  At the conclusion of the hearing, the trial
court found the enhancement allegation to be true and sentenced Appellant to
eighteen years=
imprisonment.








A defendant is
entitled to notice of prior conviction to be used for enhancement.  Brooks v. State, 957 S.W.2d 30, 33
(Tex.Crim.App. 1997).  The purpose of an
enhancement allegation is to provide the accused with notice of the prior
conviction relied upon by the State.  Coleman
v. State, 577 S.W.2d 486, 488 (Tex.Crim.App. 1979).  However, A[a]s
with deadly weapon findings, prior convictions used as enhancements must be
pled in some form, but they need not be plead in the indictment . . . .@ 
Brooks, 957 S.W.2d at 34. 
Appellant does not dispute the State=s
method of providing notice.  Rather,
Appellant challenges the timeliness of the State=s
notice of its intent to enhance punishment. 
Timeliness of the enhancement notice was not an issue in Brooks.  See Sears v. State, 91 S.W.3d 451, 454
(Tex.App.--Beaumont 2002, no pet.)(ABrooks
did not decide, and it was not an issue, whether the notice was timely.@). 
While our sister courts have not established a time certain for purposes
of timely notice, they have recognized that in the context of other notice
requirements, ten days=
notice before trial is presumptively reasonable.  See Fairrow v. State, 112 S.W.3d 288,
295 (Tex.App.--Dallas 2003, no pet.)(agreeing with the Sears Court that
enhancement notice is presumptively reasonable if given at least ten days
before trial); Sears, 91 S.W.3d at 455 (AWe
do not determine a certain time frame but mark that ten days= notice is considered sufficient in a
number of instances.@);
see also Tex.Code Crim.Proc.Ann.
art. 1.051(e)(Vernon Supp. 2004-05)(appointed counsel entitled to ten days to prepare
for a proceeding); Tex.Code
Crim.Proc.Ann. art. 28.10(a) (Vernon 1989)(after notice and upon
request, a defendant is given up to ten days to respond to an amended
indictment or information). 

A defendant is
entitled to a proper notice, that is, Aa
description of the judgment of former conviction that will enable him to find
the record and make preparation for a trial of the question whether he is the
convict named therein.@
 Hollins v. State, 571 S.W.2d 873,
875 (Tex.Crim.App. 1978), quoting Morman v. State, 127 Tex.Crim.
264, 266, 75 S.W.2d 886, 887 (1934)(per curiam), overruled on other grounds
by Rooks v. State, 576 S.W.2d 615 (Tex.Crim.App. 1978).  Proper notice advises the accused Athat a greater penalty is to be sought
than for a first offense, and to enable him to take issue thereon, and if possible
show there is a mistake in identity, or that there was no final former
conviction or the like.@  Hollins, 571 S.W.2d at 876, quoting
Palmer v. State, 128 Tex.Crim. 293, 81 S.W.2d 76, 79 (1934).













Here, Appellant
was provided with six days notice of the State=s
intent to seek enhancement of punishment. 
The State points out that the record shows Appellant had nine days= notice of the enhancement allegation
before he was asked to plea to the allegation at the punishment stage and
sixteen days= notice
before the evidence of the conviction alleged for enhancement was offered and
admitted into evidence in the punishment proceedings.  However, if the purpose of providing notice
of an alleged prior conviction remains to aid the accused in preparation for a
trial on the issue, it follows that the timeliness of such notice should be
within the time frame prior to trial. 
Further, there is evidence in the record which indicates Appellant was
surprised and unprepared in his defense with respect to the alleged prior
convictions.[1]  We find that the State=s
notice of its intent to seek an enhanced punishment was not timely and thus,
the trial court erred in enhancing punishment in this case.  We next must conduct a harm analysis to
determine whether the trial court committed reversible error.  See Tex.R.App.P.
44.2(b).

Attempted sexual
assault is a third-degree felony.  See
Tex.Pen.Code Ann. ' 22.011(f) (Vernon Supp. 2004-05), ' 15.01(d)(Vernon 2003).  The punishment range for a third-degree
felony is two to ten years=
imprisonment.  See Tex.Pen.Code Ann. ' 12.34(a)(Vernon 2003).  However, A[i]f
it is shown . . . on the trial of a third-degree felony that the defendant has
been once before convicted of a felony, on conviction he shall be punished for
a second-degree felony.@  Tex.Pen.Code
Ann. '
12.42(a)(3).  The punishment range for a
second-degree felony is two to twenty years=
imprisonment.  See Tex.Pen.Code Ann. ' 12.33(a).  The trial court sentenced Appellant to
eighteen years=
imprisonment.  Appellant argues that had
the trial court sustained his objection to the enhancement notice, the trial
court would only have had the power to sentence him for a third-degree felony
and could not have sentenced him to greater than ten years in prison.  We agree that the trial court=s error allowed for enhanced sentencing
outside the ten-year maximum and thus, was outside the penalty range allowed by
statute.  As a result, Appellant was
substantially harmed by this error. 
Issue One is sustained.

 








Motion
for New Trial

In his second
issue, Appellant contends the trial court erred in denying his motion for new
trial based upon newly discovered evidence, that is, testimony from Corina
Villescas, Appellant=s
sister.

To obtain a new
trial based on newly discovered evidence, the movant must show that: (1) the
newly discovered evidence was unknown or unavailable to the movant at the time
of his trial; (2) the movant=s
failure to discover or obtain the evidence was not due to a lack of diligence;
(3) the new evidence is admissible and is not merely cumulative, corroborative,
collateral, or impeaching; and (4) the new evidence is probably true and will
probably bring about a different result on another trial.  See Keeter v. State, 74 S.W.3d 31,
36-7 (Tex.Crim.App. 2002); Tex.Code
Crim.Proc.Ann. art. 40.001 (Vernon Supp. 2004-05).  The trial court has discretion to decide
whether to grant a new trial based upon newly-discovered evidence and its
ruling will not be reserved absent an abuse of discretion.  Keeter, 74 S.W.3d at 37.  The trial judge determines the credibility of
the witnesses and whether the new evidence is probably true.  Id.








At the hearing on
Appellant=s motion,
Ms. Villescas testified that contrary to Ms. Terrazas= testimony, when Appellant and Ms.
Terrazas first left her home to buy beer, Appellant returned alone and Ms.
Terrazas returned some time later. 
According to Ms. Villescas, Appellant was asleep on the couch when Ms.
Terrazas left her home for the last time and therefore, he did not leave with
Ms. Terrazas.  Ms. Villescas did not see
any dirt on her brother=s
clothes nor did she see any scratch marks on his face.  Ms. Villescas testified that Appellant was
wearing a brown shirt and brown pants at the time he returned to her home.[2]  On 

cross-examination, Ms. Villescas
explained that shortly after the incident, she had moved and had not told her
family members where she was living.  She
knew her brother was standing trial, but no one contacted her or told her that
she was to be a witness.  Appellant=s original trial counsel testified that
in his opinion, Ms. Villescas was a necessary and vital defense witness and
described his numerous attempts to locate Ms. Villescas prior to trial.  Appellant argued that he was entitled to a
new trial based on newly discovered evidence. 
The trial court denied Appellant=s
motion for new trial.








We find that
Appellant has failed to satisfy the first and fourth prongs of the Keeter
test.  The evidence, if believed, shows
that Appellant knew of his sister=s
identity and knowledge of the case before trial.  Further, Appellant also had personal
knowledge of the substance of her testimony because it concerned his
whereabouts and appearance on the night in question. Therefore, the evidence
was not unknown to Appellant at the time of trial.  See Delamore v. State, 128 S.W.3d 344,
355 (Tex.App.--Austin 2004, pet. ref=d)(no
showing that evidence was unknown to other defense counsel or appellant); Molinar
v. State, 910 S.W.2d 572, 583 (Tex.App.--El Paso 1995, no pet.)(if evidence
was to be believed, appellant must have had personal knowledge of it before
trial, meaning it could not then be newly discovered).  As for the fourth prong, we conclude that the
trial court was within its discretion to find on this record that the evidence
was not credible or if true, will probably not bring about a different result
upon retrial.  Since Appellant has failed
to satisfy the test for newly discovered evidence, we find the trial court did
not abuse its discretion in denying the motion for new trial.  Issue Two is overruled. 

We reverse and
remand the cause to the trial court for a new punishment phase of trial only
and in all other respects, the trial court=s
judgment is affirmed..  See Tex.Code Crim.Proc.Ann.
art. 44.29(b)(Vernon Supp. 2004-05).

 

 

 

                                                                                 


February
10, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
At the initial punishment proceeding, the State called its fingerprint expert
Baldemar Gandara for purposes of comparing Appellant=s
inked prints to prints from other judgments. 
Appellant interrupted the testimony and the following exchange occurred:

 

Defendant:        Your Honor -- Your Honor, with all due
respect to the Court, can I say something?

 

The
Court:        Well, I think you have an
attorney, and I think you should talk to your attorney first.  Okay?

 

Defendant:        Okay. 
Sorry.

 

[Defense
Counsel]:       The prints that -- the
prints that the Assistant District Attorney is going on is that no two people
-- okay -- no two people can fake this, that --

 

(Sotto voce
discussion off the record)

 

Defendant:        I=m
not -- I=m not
educated.

 

[Defense
Counsel]:       All right.

 

Defendant:        You didn=t
explain to me.

 

[Defense
Counsel]:       Well, that=s where we=re
at right now.

 

Defendant:        I want to understand what you=re telling me.  You just told me something, to sign here and
everything, and I don=t
understand what you=re
saying.

 

[Defense
Counsel]:       Right now we=re hearing testimony from the
fingerprint expert.  That=s where we=re
at.  That=s
what we=re
hearing. That=s what
you=re hearing.

 

Defendant:        Okay.

 

After a short recess, the trial
court continued the punishment proceeding because of the difficulty defense
counsels were having with their client.





[2]
Police officers found clothes matching Ms. Terrazas=
description of the clothes Appellant was wearing at the time of the attack
(blue jeans and a flannel jacket) on the couch where Appellant was sleeping
when they entered Ms. Villescas=
home.