IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0531-05






FRANCISCO VILLESCAS, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE EIGHTH COURT OF APPEALS


EL PASO COUNTY





 Keller, P.J., delivered the opinion of the Court in which PRICE,
WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. 
JOHNSON, J., concurred in the result. MEYERS, J., did not participate.





 The question in this case is whether the State's notice of intent to enhance punishment, given
six days before trial began, was timely. We disagree with the Court of Appeals's analysis, and we
therefore reverse its judgment.

I. BACKGROUND


A. Facts


 Appellant was indicted for attempted sexual assault. The indictment contained no
enhancement allegations. On February 18, 2003, six days before trial, the State filed and served
upon appellant a "notice of enhancement," describing a prior burglary conviction that the State
intended to use to elevate the punishment for the indicted offense to a second-degree felony. (1) On
February 27, at the punishment phase of trial, defense counsel lodged several objections to the
notice, including an objection that the notice was untimely. The trial court deferred ruling on the
objection until after presentation of the evidence. During the hearing, the State obtained a set of
appellant's fingerprints to compare with those found on judgments for the prior felony enhancement
conviction and also for ten prior misdemeanor convictions. Appellant expressed confusion regarding
the fingerprint comparison process, and he complained that defense counsel had not explained it to
him. In response to this complaint, the trial court continued the proceedings for a week, resuming
the punishment hearing on March 6. 

 At the March 6th hearing, defense counsel acknowledged that appellant now understood the
fingerprint procedure and that he was "quite content with it." Neither appellant nor counsel claimed
that more time was needed to prepare for any aspect of the punishment hearing. Appellant stipulated
to the judgment of prior conviction, but persisted in his plea of "not true" to the enhancement
allegation for the express purpose of preserving objections to the State's notice. During argument
to the trial court, defense counsel pointed out that the burglary of a building offense was twelve years
old and that the offense "would not be nearly as severe a crime today as it was at that point in time." (2)
The trial court found the enhancement allegation true and sentenced appellant to eighteen years in
prison. 

B. Court of Appeals


 Appellant raised the timeliness complaint on appeal. Finding the complaint to have merit,
the Court of Appeals reversed and remanded for a new punishment hearing. (3) The court observed that
other courts of appeals have found that, with regard to other statutes, ten days notice is presumptively
reasonable. (4) The court then observed that meeting this presumptive standard in the present case
depended on what time period was used as the measurement, since the notice was filed six days
before trial, nine days before the beginning of the punishment hearing, and sixteen days before the
evidence was actually offered. (5) In finding the notice of enhancement to be untimely, the Court of
Appeals held that "the time frame prior to trial" was the only period of time that could be
considered. (6) The court further held that appellant's confusion regarding the fingerprint comparison
procedure constituted evidence that appellant "was surprised and unprepared in his defense with
respect to the alleged prior convictions." (7) The appellate court then conducted a harm analysis, citing
Rule 44.2(b), the standard for evaluating nonconstitutional error. (8) The Court of Appeals found that
appellant was "substantially harmed" by the trial court's decision to allow the enhancement because
the sentence was outside the range of punishment for a third degree felony (the punishment range
for the unenhanced offense). (9)

II. ANALYSIS


 In Brooks v. State, we held that "prior convictions used as enhancements must be pled in
some form, but they need not be pled in the indictment." (10) The Court of Appeals's use of the
nonconstitutional standard for its harm analysis suggests that the court believes the violation of the
Brooks notice requirement to be nonconstitutional error. Although the Brooks opinion did not
explicitly refer to the source of the pleading requirement, it did make clear that the requirement did
not flow from statutory provisions relating to the indictment, (11) and in fact, we are aware of no statute
that requires this type of pleading. A clue to the source of the requirement, however, can be found
in Brooks's citation to Ex parte Patterson. (12) Patterson discussed the somewhat similar status of
deadly weapon allegations and characterized the issue as one of "notice" that is "firmly rooted in
fundamental precepts of due process and due course of law - the right to be informed, at a bare
minimum, that a particular proceeding (over and above the determination of guilt/innocence and
sentence) will occur which may operate to further diminish the accused's liberty interest." (13)

 This Court's previous pronouncements regarding the purpose of conveying proper notice of

enhancement allegations are consistent with characterizing the pleading requirement as a right to
notice rooted in due process: 

The accused is entitled to a description of the judgment of former conviction that will
enable him to find the record and make preparation for a trial of the question of
whether he is the named convict therein. (14)


* * *



This averment is necessary in order to give the accused notice that a greater penalty
is to be sought than for a first offense, and to enable him to take issue thereon, and
if possible show there is a mistake in identity, or that there was no final former
conviction or the like. (15) 


 In Oyler v. Boles, the United States Supreme Court addressed the due process requirements
pertaining to notice of enhancement allegations. (16) There, the defendants were sentenced in West
Virginia pursuant to a "three strikes" enhancement scheme, imposing a mandatory life sentence upon
the third conviction of a crime punishable by confinement in a penitentiary. (17) The increased penalty
was "to be invoked by an information filed 'immediately upon conviction and before sentence.'" (18)
The defendants claimed that the scheme violated due process by depriving them of notice sufficient
to afford an opportunity to prepare for and defend against the enhancement allegations. (19) 

 The Supreme Court upheld this scheme, holding that while some form of notice was required,
the notice did not have to be given in advance of trial:

Even though an habitual criminal charge does not state a separate offense, the
determination of whether one is an habitual criminal is "essentially independent" of
the determination of guilt on the underlying substantive offense. Thus, although the
habitual criminal issue may be combined with the trial of the felony charge, "it is a
distinct issue, and it may appropriately be the subject of separate determination." If
West Virginia chooses to handle the matter as two separate proceedings, due process
does not require advance notice that the trial on the substantive offense will be
followed by an habitual criminal proceeding. Nevertheless, a defendant must receive
reasonable notice and an opportunity to be heard relative to the recidivist charge even
if due process does not require that notice be given prior to the trial on the
substantive offense. (20)

 

The Court approved this practice even though it meant that the State's invocation of the enhancement
was "first brought home to the accused when, after conviction on the substantive offense but before
sentencing, the information [was] read to him in open court." (21) The Court rejected the defendants'
due process claims because the defendants were represented by counsel and neither the defendants
nor counsel sought "to raise any matters in defense" or to obtain "a continuance . . . to investigate
the existence of any possible defense." (22)

 In light of our prior cases and the Supreme Court's decision in Oyler, we conclude that the
notice requirement dictated by Brooks is of constitutional origin, and we hold that the Court of
Appeals erred in impliedly concluding otherwise. For this reason, we also disavow the appellate
court's attachment of special significance to the time period of ten days. We have no doubt that
statutory time constraints are designed to safeguard constitutional notice rights in a manner that is
easy for the parties to follow and for courts to apply, but in a review for constitutional error, the
statutes are not controlling. The ultimate question is whether constitutionally adequate notice was
given. We likewise reject the appellate court's conclusion that the relevant time period for
determining proper notice is the period before trial. Under Oyler, due process does not even require
that the notice be given before the guilt phase begins, much less that it be given a number days
before trial. And limiting the notice period to "before trial" ignores the possibility that the trial court
could take measures to cure the notice problem by granting a continuance - an option Oyler
expressly contemplates. 

 In fact, the above discussion shows that when a defendant has no defense to the enhancement
allegation and has not suggested the need for a continuance in order to prepare one, notice given at
the beginning of the punishment phase satisfies the federal constitution. While this Court also
addressed the Texas Constitution's Due Course of Law clause in Patterson, we did not hold that due
course of law was more protective than due process with regard to the amount of time required for
notice, (23) and we see no reason to do so now. In Patterson, the defendant learned of the State's intent
to seek a deadly weapon finding "only after all the evidence was in, both sides had closed, and the
charge was read to the jury." (24) It was in that context that we suggested that "no amount of
uncontroverted evidence, however conclusive it may seem, will remedy the fact that applicant was
given no prior indication that the nature of the weapon used was to be a particular issue in the
case." (25)

 Like the defendants in Oyler, appellant in this case had no defense to the enhancement
allegation - he stipulated to the prior conviction. Nor did he suggest that a continuance was
necessary to discover or prepare a defense, beyond the seven day continuance he had already
received. Appellant received substantially more than the notice minimally required to satisfy due
process. He was given notice six days before the beginning of trial, and he had an additional seven
day continuance during the punishment hearing.

 We must also disagree with the Court of Appeals's conclusion that appellant's confusion
regarding the fingerprint comparison procedure established prejudice stemming from a lack of
notice. The appellate court's statement that appellant "was surprised and unprepared in his defense
with respect to the alleged prior convictions" - plural - indicates that the confusion about the
fingerprint procedure had nothing to do with the timeliness of the enhancement allegation. Only one
prior conviction was ever alleged for the purpose of enhancement. There was never any dispute
about the ten misdemeanor convictions introduced into evidence. Even if the State had not sought
to use the prior felony conviction, appellant would still have been confused about the fingerprint
comparison procedure for the misdemeanor judgments. Moreover, appellant never lodged a notice
objection to any of the convictions with regard to their admissibility into evidence. (26) The prior
felony conviction would have been admissible at the punishment hearing under Article 37.07 even
if it had not been used by the State for enhancement. (27) The fingerprint comparison issue was
unrelated to the notice issue.

 Even if appellant's confusion about the procedure had been relevant to his notice claim,
though, the trial court cured that issue by granting a seven-day continuance. That period was more
than enough time for defense counsel to explain the procedure to appellant, and in fact, the record
shows that after the continuance appellant understood and was satisfied with the procedure.

 In light of our discussion, we conclude that appellant was given sufficient notice of the
enhancement allegation. The judgment of the Court of Appeals is reversed and the trial court's
judgment is affirmed. (28) 

 Keller, P.J.

Date delivered: April 5, 2006

Publish
1. See Tex. Pen. Code §12.42(a)(3).
2. In 1991, burglary of a building with intent to commit theft was a second degree felony,
but the Legislature lowered the offense to a state jail felony in 1994. See Acts 1993, 73rd Leg.,
ch. 900, §1.01, eff. Sept. 1, 1994 (modifying Tex. Pen. Code §30.02(c)).
3. Villescas v. State, No. 08-03-00131-CR, slip op. at 3-7, 10 (Tex. App.-El Paso,
February 10, 2005)(not designated for publication).
4. Id. at 5 (citing Fairrow v. State, 112 S.W.3d 288, 295 (Tex. App.-Dallas 2003, no pet.);
Sears v. State, 91 S.W.3d 451, 455 (Tex. App.-Beaumont 2002, no pet.); Tex. Code Crim.
Proc., Art. 1.051(e)(appointed counsel entitled to ten days to prepare); and Tex. Code Crim.
Proc., Art. 28.10(a)(after notice and upon request, defense allowed ten days to respond to an
amended indictment or information)). 
5. Id. at 5-6.
6. Id. at 6.
7. Id.
8. "Any other error, defect, irregularity, or variance that does not affect substantial rights
must be disregarded." Tex. R. App. P. 44.2(b).
9. Villescas, slip op. at 7. See Tex. Pen. Code §§22.011(f)(sexual assault a felony of the
second degree) and 15.01(d)(attempt offense is one category lower than the offense attempted). 
10. 957 S.W.2d 30, 34 (Tex. Crim. App. 1997).
11. Id. at 32.
12. 957 S.W.2d at 34 (citing Ex parte Patterson, 740 S.W.2d 766, 776 (Tex. Crim. App.
1987)).
13. 740 S.W.2d at 774 n. 7.
14. Hollins v. State, 571 S.W.2d 873, 875 (Tex. Crim. App. 1978)(quoting Morman v.
State, 127 Tex. Crim. 264, 75 S.W.2d 886 (1934)).
15. Id. (quoting Palmer v. State, 128 Tex. Crim. 293, 81 S.W.2d 76, 79 (1934)(quoting 12
Tex. Jur. 2d 795)).
16. 368 U.S. 448 (1962).
17. Id. at 449.
18. Id.
19. Id. at 451-452, 453-454.
20. Id. at 452 (internal citations omitted).
21. Id. at 450-451.
22. Id. at 454.
23. See Patterson, passim.
24. Id. at 777.
25. Id.
26. See Tex. Code Crim. Proc., Art. 37.07, §3(g)(upon timely request, defendant entitled
to notice of intent to introduce evidence of extraneous offenses at the punishment phase of trial). 
27. Art. 37.07, §3(a)(1)(prior criminal record admissible at the punishment phase).
28. A remand is unnecessary because there are no unresolved points of error.